UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID WAYNE THOMAS,                          Case No. 13-10579

                    Plaintiff,                 Patrick J. Duggan
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge
                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 12)**

I.   **PROCEDURAL HISTORY**

     A.   **Proceedings in this Court**

     On February 11, 2013, plaintiff David Wayne Thomas filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Patrick J. Duggan referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claim for disability and disability insurance benefits and supplemental security

income.  (Dkt. 2).  This matter is before the Court on cross-motions for summary

judgment.  (Dkt. 8, 12).

### B.    Administrative Proceedings

Plaintiff filed the instant claims for disability and disability insurance benefits and supplemental security income on June 2, 2010, alleging disability beginning December 1, 2006 in both applications.  (Dkt. 6-5, Pg ID 159-60, 166-70).  Plaintiff's claims were initially disapproved by the Commissioner on January 28, 2011.  (Dkt. 6-3, Pg ID 81-82).  Plaintiff requested a hearing and on October 4, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Elliott Bunce, who considered the case de novo.  (Dkt. 6-2, Pg ID 60-79).  In a decision dated November 21, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 43-55).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 14, 2012, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 25-27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1970 and was 41 years old at the time of the administrative hearing, and 36 years of age on the alleged disability onset date. (Dkt. 6-2, Pg ID 53).  Plaintiff had past relevant work as a forklift operator and as a machine operator.  (Dkt. 6-2, Pg ID 75).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 6-2, Pg ID 48).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative joint disease of the shoulder; degenerative disc disease; degenerative joint disease of the knee; obesity; depressive disorder; anxiety disorder; and substance addiction disorder.  (Dkt. 6-2, Pg ID 48-49).  At step three, the ALJ found no evidence that plaintiff's impairment or combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID 49-51).  The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform work that does not require: exertion above the light level; or more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; or more than simple, routine, repetitious tasks with one- or two-step instructions; or strict production quotas.

(Dkt. 6-2, Pg ID 51-53).

At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work, which was classified as performed at the medium exertional level and thus beyond the scope of the RFC. (Dkt. 6-2, Pg ID 53). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 6-2, Pg ID 53-54). Based on the foregoing, the ALJ concluded that plaintiff had not been under a disability from December 1, 2006 through the date of the decision. (Dkt. 6-2, Pg ID 54-55).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred in assessing plaintiff's credibility and failed to properly evaluate the medical records and thus formed an inaccurate hypothetical question that did not accurately portray plaintiff's impairments. According to plaintiff, because each element of the hypothetical does not accurately describe plaintiff in all significant, relevant respects, the vocational expert's testimony at the hearing should not constitute substantial evidence supporting the ALJ's decision.

Plaintiff contends that the ALJ did not properly evaluate all of plaintiff's impairments in the hypothetical question. The ALJ found that plaintiff suffered from the severe impairments of "degenerative joint disease of the shoulder, degenerative disc disease; degenerative joint disease of the knee; obesity; depressive disorder; anxiety disorder; substance addiction disorder." (Tr. 24).

4

The ALJ also concluded that although he found that the

> …claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms;
> however, the claimant's statement concerning the
> intensity, persistence and limiting effects of these
> symptoms are not fully persuasive to the extent they are
> inconsistent with the above residual functional capacity
> assessment.

(Tr. 27).  At the hearing, plaintiff testified regarding his ability to do chores

around the house and stated that he only does "a couple, I try to do some dishes

when I can and usually when I'm sitting sometimes my wife will bring the laundry

out and I'll fold some clothes."  (Tr. 43).  Additionally, plaintiff indicated that his

pain is the worst in his "lower back and it goes into my lower, both my lower legs

is where it hurts the worst, like my lower extremities."  (Tr. 43).  He also indicated

that he does not believe his medicine works "very effective."  (Tr. 44) He also

indicated trouble sleeping and that he has "a hard concentrating and I have a hard

time remembering stuff."  (Tr. 45).  Plaintiff stated he can only lift five pounds,

has difficulty walking due to his "legs start cramping up really bad and my lower

back," and when he "stand[s] for a long period of time my lower back starts

cramping up and I have to adjust."  (Tr. 47).  He also stated that when he sits he

"puts my legs up and that kind of helps or lay down on the couch."  (Tr. 50).

   Plaintiff argues that his testimony is backed up by medical records that the

ALJ erred in finding that his testimony was not credible.  With regard to his

physical pain, plaintiff asserts that a January 2007 record indicates back and left shoulder pain. (Tr. 200). Plaintiff asserts that Dr. Jawad Shah also indicated that plaintiff "has had a long history of low back pain" and that it has "become especially exacerbated" and that "he has tried epidural steroid injections as well as physical therapy…," however, his "pain in his low back is quite severe." (Tr. 204). The record also indicates an assessment of left rotator cuff tear and lumbar disc herniation in July 2008. (Tr. 210). Plaintiff further asserts that a December 2007 MRI of the shoulder gave the impression of a "high grade partial undersurface tear…," "supraspinatus tendinosis," and "mild acromioclavicular hypertrophic degenerative changes with minimal supraspinatus impingement." (Tr. 234). Dr. Rao gave the assessment of "lower back pain with radicular pain with some decrease in pain," "lumbar degenerative disk disease," "lumbar herniated disk with recurrence of lower back pain with radicular pain," and "sacroiliitis/L5 radicular pain." (Tr. 242). An MRI of the Lumbar spine gave the impression of disc bulges and disc protusions. (Tr. 255). In addition, a report from the Flint Neurological Center indicated that "[plaintiff] reports hearing and feeling a popping in his mid and lower spine when he bends over and it usually exacerbates his back pain for a week or so." (Tr. 288). Plaintiff contends that he continued to complain "of severe pain in his legs and back" to his doctor.

Plaintiff also contends that his psychological issues are evidenced in the

6

record, which indicates anxiety and depression (Tr. 200), and also indicates that his "nerves bad- very anxious a lot of things going on now." (Tr. 201). Plaintiff was also assessed with acute panic, adjustment disorder, and depressed mood (Tr. 225), and diagnosed with depressive disorder NOS, anxiety disorder NOS, and a Global Assessment of Functioning (GAF) score of 59. (Tr. 298). Plaintiff therefore concludes that his testimony regarding his severe medical impairments is backed up by medical documentation and the ALJ's finding that his testimony was not credible is clearly in error.

Plaintiff further asserts that the vocational expert testified, in response to the hypothetical questions posed by the ALJ that claimant could perform work as a cashier, housekeeping, and stock clerk. Plaintiff argues, however, that the hypothetical did not represent plaintiff in all relevant aspects and, in fact when the ALJ added limitations in regards to absenteeism, the vocational expert indicated that "more than one unexcused absence per month would lead to termination," and that there are typically two 15 minute breaks and a 30- to 60-minute lunch in an eight-hour shift." (Tr. 30). Plaintiff argues that due to his severe impairments, it is clear and supported by medical records that he in fact would have to take extra breaks and have unexcused absences for more than one day a month. In addition, plaintiff notes that the vocational expert indicated that if a person had to elevate their feet to waist level outside of scheduled breaks or was 20% off task, then

those limitations would also be work preclusive.  (Tr. 30).  According to plaintiff, the hypothetical that the ALJ decided to follow and rely on did not represent plaintiff in every aspect and therefore cannot constitute substantial evidence supporting the ALJ's decision to deny benefits.  Plaintiff argues that the ALJ's decision to pass over these facts in the hypothetical that he decided to follow was clearly in error and this court should grant plaintiff his benefits, or in the alternative, remand this matter for further proceedings about plaintiff's absenteeism, unscheduled breaks, and the need to elevate his feet.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff could perform a reduced range of light work.  According to the Commissioner, the ALJ reasonably found that despite plaintiff's impairments, he was not disabled because he had the residual functional capacity to perform light work that involved only occasional climbing, balancing, stooping, kneeling, crouching or crawling; and that he was limited to simple, routine, repetitious tasks, with one- or two-step instructions and without strict production quotas.  (Tr. 27-29).  The Commissioner contends that in reaching that conclusion, the ALJ considered the objective medical evidence relating to plaintiff's physical impairments.  Specifically, the ALJ found that plaintiff's physical examinations were largely normal.  (Tr. 28).  For example, the ALJ considered treating

physician Dr. Nasser Sabbagh's examination notes which revealed that: (1) plaintiff had full flexion, no significant tenderness in his lower back and a negative straight leg raise test (Tr. 28, 289-90); (2) plaintiff's lower back problems were not traceable to any objective findings (Tr. 28, 290); and (3) plaintiff had full strength in his arms and legs. (Tr. 28, 288). The ALJ also considered treating physician Dr. Rama Rao's reports that plaintiff had good motor strength, a normal sensory examination, good strength in his arms and legs and no spasms. (Tr. 28, 242).

In addition, the ALJ considered diagnostic images in the record and reasonably found that they supported his decision that plaintiff could perform a reduced range of light work. (Tr. 28). The Commissioner contends that the ALJ noted that Dr. Sabbagh analyzed plaintiff's diagnostic images and found that his 2006 lower back MRI was "quite mild" and that his 2007 electromyogram "failed to show any denervation." (Tr. 28, 290). The ALJ also considered an October 2008 radiological study of plaintiff's middle spine that was "negative," and a study of his lower spine that showed only minimal displacement. (Tr. 28, 285-86). The Commissioner asserts that the ALJ further noted that an April 2011 MRI of plaintiff's lower back showed a small focal disc protrusion at the L5-S1 levels with an annular tear, and an annular bulging and tear at the L3-4 and L4-5 levels, but that the remainder of plaintiff's spine was intact. (Tr. 28, 336-37).

9

The Commissioner asserts that the ALJ also considered examining physician Dr. Clifford Buchman's January 21, 2011 report that plaintiff's gait, his heel and toe walking and the neuromuscular status of his feet were all satisfactory, and that plaintiff did not have muscle spasms.  (Tr. 28, 301).  As the ALJ noted, Dr. Buchman diagnosed plaintiff with complaints of low back pain, but qualified his diagnoses by noting that it was made without objective evidence of ongoing pathology.  (Tr. 28, 301).  The Commissioner argues that, tellingly, Dr. Buchman opined that plaintiff could perform activities without restrictions.  (Tr. 301).

As for plaintiff's mental impairments, the Commissioner asserts that the ALJ considered examining psychologist Dr. Matthew Dickson's notes, which reflect the only mental examination in the record.  (Tr. 25, 28, 293-98).  Dr. Dickson reported that plaintiff was socially appropriate, fully oriented, had normal mental activity, had normal mood, was in contact with reality, appeared to have normal psychomotor activity levels and had no significant evidence of hallucinations or delusions.  (Tr. 25, 294-95).  The Commissioner contends that, to that end, as the ALJ noted, Dr. Dickson opined that plaintiff was not impaired in his ability to understand, attend to, remember and carry out instructions (Tr. 25, 28, 295), and only mildly impaired in his ability to respond appropriately to coworkers and supervision and to adapt to changes and stress in the work place. (Tr. 28, 28, 295).

10

The Commissioner asserts that the ALJ further considered medical opinion evidence. (Tr. 28-29). In so doing, the ALJ noted that no medical source found that plaintiff was disabled or imposed restrictions greater than as determined by the ALJ. (Tr. 28-29). In fact, the Commissioner continued, the ALJ's conclusion was more generous than reviewing physician Dr. Quan Nguyen's opinion that plaintiff could perform medium work. (Tr. 28, 65-66). The Commissioner asserts that the ALJ's decision also was more generous than reviewing psychiatrist Dr. Dennis Beshara who found that plaintiff had only mild limitations. (Tr. 29, 63). On the contrary, the ALJ found that plaintiff had severe mental limitations attributable to his pain, anxiety, depression and substance addiction and, thus, reasonably limited plaintiff to simple, routine, repetitive tasks, with one- or two-step instructions and no strict production quotas. (Tr. 26, 29). The Commissioner contends that, notably, plaintiff does not address any of the medical opinions in his brief or argue that the ALJ erred in evaluating them.

Finally, the Commissioner argues that the ALJ considered plaintiff's statements about his condition and found that although plaintiff was generally credible, his symptoms did not preclude him from working. (Tr. 28). The Commissioner argues that a court "may not disturb" an ALJ's well reasoned credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The Commissioner contend first, as explained

11

above, the ALJ found that the medical evidence did not support plaintiff's contention that his symptoms were disabling. (Tr. 27-29). The Commissioner asserts that an ALJ may discount a claimant's subjective complaints where, as here, the objective evidence did not suggest he was disabled. *Stanley v. Sec'y of Health & Human Servs.,* 39 F.3d 115, 118 (6th Cir. 1994). Second, the ALJ considered plaintiff's testimony that he had side effects relating to his medications and that he needed to sit with his leg elevated (Tr. 28, 49, 50), but found no record evidence supporting these symptoms. Third, plaintiff testified that he performed household chores, did laundry and cooked, all of which indicated that he could perform the limited amount of physical activity required for light work. (Tr. 43, 294). The Commissioner notes that "[a]n ALJ may also consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997). The Sixth Circuit has held that it accords great deference to an ALJ's credibility assessment because the ALJ had the opportunity to observe the witness at the hearing. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

The Commissioner argues that the Court should affirm the ALJ's well-supported credibility finding. According to the Commissioner, plaintiff argues that the ALJ misconstrued the medical evidence and plaintiff's credibility in

concluding that he was not disabled.  (Dkt. 8, p. 11).  However, in doing so, plaintiff cites many medical records (Dkt. 8, p. 11), but none of the evidence plaintiff cited compels the conclusion that his impairments preclude him from performing light work.  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (agency's decision reversible only if evidence "compels" reversal).  For example, plaintiff points to several medical records showing that his doctors diagnosed him with back pain, anxiety and depression (Dkt. 8, p. 11), but the fact that plaintiff had these impairments did not prove that he was disabled by them.  The Commissioner notes that the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).  The Commissioner concludes that, in sum, plaintiff's laundry list of symptoms, diagnoses, allegations and complaints about the ALJ's weighing of the evidence does nothing more than ask this Court to review the evidence anew.  The Commissioner contends that the request, however, is precluded by long-standing case law.  *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  According to the Commissioner, it is not sufficient for plaintiff to merely rehash the record and argue that some evidence contradicts the ALJ's decision that he was not disabled. The Commissioner's decision should be upheld even if substantial evidence "contradicts" the ALJ's conclusion.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th

Cir. 1993). The Commissioner argues that the ALJ's decision that plaintiff was

not disabled was based on a thorough review of the record and should be affirmed

The Commissioner further argues that the ALJ reasonably relied on the

vocational expert's testimony in concluding that plaintiff was not disabled. At the

hearing, the ALJ asked the vocational expert if jobs existed for a person of

plaintiff's age, education and work experience at the light level that did not require

more than occasional climbing, balancing, stooping, kneeling, crouching or

crawling that involved simple, routine, repetitive tasks with one- or two-step

instructions and that did not impose strict production quotas. (Tr. 51-52). In

response, the vocational expert testified that such a hypothetical individual could

perform thousands of jobs in the region. (Tr. 29-30, 52). The Commissioner

contends that the ALJ's hypothetical question to the vocational expert included the

same limitations as those in the residual functional capacity assessment contained

in his decision. (Tr. 27, 51-52). Thus, the Commissioner concludes, the ALJ

reasonably relied on the vocational expert's testimony in concluding that plaintiff

was not disabled. (Tr. 27-30, 52).

The Commissioner asserts that plaintiff claims that the ALJ should have

relied on the vocational expert's testimony that work would be precluded for an

individual who had to take multiple daily breaks at unpredicted times to elevate

his feet. (Dkt. 8, p. 12; Tr. 53-52). The Commissioner argues that plaintiff is

14

mistaken. "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith*, 307 F.3d at 378. The Commissioner states that "[i]t is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235. The Commissioner argues, as it did above, that no objective evidence supported plaintiff's claim that he had to elevate his feet. Moreover, as shown, substantial evidence supports the ALJ's residual functional capacity assessment that plaintiff could perform light work with certain restrictions. The Commissioner contends that the ALJ's hypothetical to the vocational expert likewise limited plaintiff to light work with identical restrictions. (Tr. 51-52). Thus, the Commissioner continues, the ALJ's reliance of the vocational expert's testimony that plaintiff could perform a significant number of jobs is supported by substantial evidence and should be affirmed. *Smith*, 307 F.3d at 378; *Casey*, 987 F.2d at 1235. The Commissioner therefore requests that the Court affirm the Commissioner's decision.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely
reviews the agency determination for exceeding statutory authority or for being
arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The
administrative process itself is multifaceted in that a state agency makes an initial
determination that can be appealed first to the agency itself, then to an ALJ, and
finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is
not found during this administrative review process, the claimant may file an
action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this
statute is limited in that the court "must affirm the Commissioner's conclusions
absent a determination that the Commissioner has failed to apply the correct legal
standard or has made findings of fact unsupported by substantial evidence in the
record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);
*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding
whether substantial evidence supports the ALJ's decision, "we do not try the case
de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.
McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,
387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to
evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

16

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

18

**B.      Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

  "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.   Analysis and Conclusions

#### 1.   The ALJ's Credibility Assessment is Supported by Substantial Weight

Plaintiff points to his severe impairments of degenerative joint disease of

the shoulder and knee, degenerative disc disease, obesity, depressive disorder,

anxiety disorder and substance abuse addiction, and argues that the ALJ erred in

21

finding that plaintiff's testimony as to the intensity and persistence of his symptoms associated with these impairments was not entirely credible. As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).

22

Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1529, 416.929. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The undersigned suggests that the ALJ's finding that the objective record evidence did not support plaintiff's claims of disabling limitations is supported by substantial evidence. Here, as discussed above, the ALJ considered plaintiff's

allegations in light of the other evidence in the record and sufficiently explained how plaintiff's allegations were inconsistent with the record evidence. The ALJ reviewed and summarized the record medical evidence, noting that plaintiff's physical impairments are well documented, but that no treating or examining physician has opined that plaintiff is disabled. (Tr. 28). The ALJ noted that plaintiff was diagnosed with back pain and anxiety disorder in December 2006, and that subsequent physical examinations noted plaintiff's complaints of back pain, but the examinations were largely normal. (Tr. 27-28). For example, the ALJ noted that plaintiff was diagnosed with chronic low back pain with some radiation down the lower extremities with numbness and tingling, and pain in the left shoulder that seemed to be related to a partial rotator cuff tear in August 2008, but plaintiff's neurological examination did not show any objective findings, a 2006 lumbar spine MRI was "quite mild," and a 2007 electromyogram "failed to show any denervation." (Tr. 27-28, citing Tr. 202, 289-90). In October 2008, plaintiff had no deformities or tenderness over the spine and full strength in the four extremities, an April 2011 lumbar spine MRI revealed small focal disc protrusion at L5-S1 with annular tear producing mild thecal sac effacement and an annular bulging with annular tear at L3-4 and L4-5, but that the remainder of plaintiff's spine was intact, and in June 2011, plaintiff had normal station and posture and the sensory examination was normal to light touch. (Tr. 28, citing Tr

24

285-86, 314-24, 336-37).  Plaintiff cites to an examination by Dr. Rao in which he assessed plaintiff with lower back pain with radicular pain with some decrease in pain, lumbar degenerative disk disease, lumbar herniated disk with recurrence of lower back pain with radicular pain and sacroiliitis/L5 radicular pain, but fails to note in that same examination that Dr. Rao noted that plaintiff's extremities were normal, he had good motor strength, normal sensory, good strength in his bilateral upper and lower extremities, and no spasms.  (Tr. 242).

The ALJ further noted that plaintiff underwent an orthopedic consultative examination with Dr. Clifford M. Buchman, D.O., a State agency physician, in January 2011, which noted that plaintiff's tandem gait and heel and toe walking were described as satisfactory, the neurovascular status for the feet was satisfactory, and he had no muscle spasm.  (Tr. 28, citing Tr. 299-305).  Dr. Buchman diagnosed plaintiff with complaints of low back pain, but qualified his diagnoses by noting that it was made without objective evidence of ongoing pathology, and Dr. Buchman concluded that plaintiff could perform activities without restrictions.  (Tr. 28, citing Tr. 299-305).  The ALJ concluded, based on plaintiff's treatment records, that plaintiff had limitations associated with his severe impairments, but that those impairments would not impose limitations which would preclude light exertion.  (Tr. 28).

The ALJ also addressed plaintiff's claimed mental impairments, finding

25

those impairments are documented and plaintiff was diagnosed with depression, anxiety and alcoholism and prescribed medication, but that the evidence did not show limitations which would preclude work within the RFC adopted here. (Tr. 25, 28). The ALJ noted that in January 2011, plaintiff attended a consultative psychological examination with Dr. Matthew Dickson, Ph.D., who examined plaintiff and concluded that his mental abilities to understand, attend to, remember, and carry out instructions were not impaired, and that his abilities to respond appropriately to coworkers and supervision, and to adapt to change and stress in the workplace, were mildly impaired, and assigned plaintiff a Global Assessment of Functioning (GAF) score of 59, which generally indicates only moderate symptoms. (Tr. 25-26, citing Tr. 294-95). In addition, the State agency non-examining physician Dr. Dennis Beshara, M.D., reviewed plaintiff's medical records and opined that plaintiff was mildly impaired in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and that he had no episodes of decompensation of an extended duration. (Tr. 26, citing Tr. 63).

The ALJ did not summarily reject plaintiff's complaints, but instead accounted for plaintiff's credible limitations in the residual functional capacity assessment. The ALJ noted:

> The claimant said he has chronic lower-back pain and

26

> leg pain; this is reasonably to be expected, but the RFC
> adopted here accommodates any limitation by specifying
> light exertion and reduced postural movements.  He said
> that he has significant side effects from medication; there
> is some reference to reaction to Vicodin, but other than
> that, I find no significant limitation from medication.
> The claimant testified to a need for leg elevation, but I do
> not find this documented.  I note that the vocational
> expert cited occupations at the sedentary exertional level.
> I have not adopted a sedentary RFC because I do not find
> a basis for it in the medical record.  However, even if the
> claimant had a sedentary RFC, he could perform other
> work.

(Tr. 28-29).  Accordingly, the ALJ found the record evidence did not support

plaintiff's contention that his symptoms were disabling.  As noted above, an ALJ

may discount a claimant's subjective complaints where, as here, the objective

evidence did not suggest he was disabled.  The ALJ considered plaintiff's

testimony that he had disabling side effects from his medication and that he

needed to sit with his leg elevated, and found no record evidence supporting these

symptoms (Tr. 28-29), and, indeed, plaintiff has cited none.  Further, plaintiff

notes that he testified that he performs household chores, did laundry, cooked and

drives (Tr. 49-50), and he made these same statements to the consulting

psychologist (Tr. 294), which further supports the ALJ's RFC.  *See* 20 C.F.R.

§ 404.1529(c)(3)(I); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392

(6th Cir. 2004) (recognizing that in nearly all cases, an evaluation of a claimant's

daily activities is relevant to the evaluation of subjective complaints and

ultimately, to the determination of disability); *Heston*, 245 F.3d at 536 (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).  Plaintiff also asserts he testified that he had difficulty concentrating and remembering things, but did not cite any objective evidence in support of that contention.  Rather, the consulting examining psychologist opined that plaintiff's "mental abilities to understand, attend to, remember, and carry out instructions are not impaired," and that plaintiff's "abilities to respond appropriately to co-workers and supervision and to adapt to change and stress in the workplace are mildly impaired."  (Tr. 295).  The ALJ reasonably relied on this evidence in formulating plaintiff's RFC.

Therefore, the ALJ credited the physicians' assessments and diagnoses, evaluated the extent to which the severity of plaintiff's pain and other symptoms could reasonably be accepted as consistent with the medical evidence, and found plaintiff's testimony about the extent of pain and symptoms not fully credible. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531.  The undersigned concludes that there is substantial evidence in the record to support the ALJ's credibility findings and conclusion that plaintiff's impairments do not

preclude him from performing the identified jobs.

### 2.    The ALJ's RFC Determination is Supported by Substantial Weight

Plaintiff complains that each element of the hypothetical question posed to the vocational expert does not accurately describe plaintiff in all significant, relevant respects and that the vocational expert's testimony at the hearing therefore does not constitute substantial evidence supporting the ALJ's determination that plaintiff is not disabled.  Although plaintiff phrases this as a Step Five finding, the undersigned concludes that plaintiff is attempting to refute the RFC finding via a purported Step Five error.  *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

Plaintiff argues that the ALJ erred in determining plaintiff's RFC because that RFC did not include plaintiff's testimony as to the need to take extra breaks and have more than one unexcused absence each month, or his need to elevate his legs.  However, plaintiff's claim that the ALJ's RFC determination is in error because that determination does not include plaintiff's subjective testimony is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints

and may properly consider the credibility of a claimant when making a
determination of disability," and "can present a hypothetical to the [vocational
expert] on the basis of his own assessment if he reasonably deems the claimant's
testimony to be inaccurate." *Jones*, 336 F.3d at 476. The residual functional
capacity circumscribes "the claimant's residual abilities or what a claimant can do,
not what maladies a claimant suffers from-though the maladies will certainly
inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of
Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment
may or may not affect his or her functional capacity to do work. One does not
necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480,
*5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the
same severe impairment may have different [residual functional capacities]
depending on their other impairments, pain, and other symptoms." *Griffeth v.
Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R.
§ 404.1545(e). Thus, while the medical evidence indicates that plaintiff does have
severe impairments, as noted by the ALJ, it does not specifically support
plaintiff's testimony regarding the extent of his limitations.

  As explained above, in determining plaintiff's RFC, the ALJ thoroughly

reviewed the record evidence, including the opinion evidence.[1]  (Tr. 25-29).  The

ALJ noted that plaintiff's physical examinations were largely normal and that the

diagnostic tests supported his decision that plaintiff could perform a reduced range

of light work.  The ALJ reviewed the opinion evidence in the record and found:

> As for the opinion evidence, I give significant weight to
> the objective evidence of record.  The State agency
> medical expert found the claimant capable of an exertion
> above that which is determined here (Exhibit 3A, 4A).  I
> have further reduced his RFC, however, to fully
> accommodate all possible limitations posed by his
> impairments.  As noted above (Finding Four), the State
> agency non-examining expert found no more than a mild
> limitation for the "paragraph B" criteria (Exhibits 3A/6,
> 4A/6), but I find that pain reasonably may be expected to
> limit the claimant to simple, routine, repetitious tasks,
> with one- or two-step instructions, and no strict
> production quotas.

(Tr. 29).  The ALJ further explained:

> The RFC adopted here specifies light exertion and
> reduced postural movements to address any limitation
> caused by the claimant's DJD of the shoulder, DDD,
> DJD of the knee and obesity.  It also specifies very-

---

[1]Although plaintiff's motion contains a general discussion of the "treating physician rule," he does not identify any treating physician or treating physician's opinion that the ALJ purportedly failed to properly address.  (Dkt. 8, pp. 12-15).  Thus, this argument should be deemed waived.  *See McPherson v. Kelsey*, 125 F.3d at 989, 995, 96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  In any event, as the ALJ acknowledged, only the State agency examining physician and psychologist and reviewing psychiatrist rendered opinion evidence in this case, and there is no opinion evidence from plaintiff's treating physicians as to plaintiff's functional limitations.  (Tr. 29).  In addition, the ALJ stated that he did give significant weight to the objective record evidence, including the record evidence from plaintiff's treating physicians.  (*Id.*).

> simple tasks and no strict production quotas to
> accommodate any limitation caused by the claimant's
> depressive disorder, anxiety disorder, and substance
> addiction disorder.  I find that these provisions
> accommodate the shortcomings established on this
> record.  To the extent that claimant alleges that he cannot
> work within the scope of the RFC, I find the allegation
> not fully credible.

(Tr. 29).  No medical source had ever imposed a restriction that plaintiff needs to take unscheduled breaks or will have unexpected absences, or that plaintiff needs to elevate his leg.  And, as discussed above, the ALJ's credibility determination is supported by substantial evidence.  The undersigned suggests that the State agency physicians' opinions provide substantial evidence in support of the ALJ's residual functional capacity, and plaintiff's claim of error should be denied.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date: February 17, 2014                           s/Michael Hluchaniuk
                                                  Michael Hluchaniuk
                                                  United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 17, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Alison Schwartz, Allen Duarte, Derri T. Thomas .

<div style="margin-left:40%">

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>